ASOCIACION DE COMPOSITORES Y EDITORES DE MUSICA LATINOAMERICANA, Petitioner,

v.

COPYRIGHT ROYALTY TRIBUNAL, Respondent,

American Society of Composers, Authors and Publishers, et al., Intervenors.

No. 85–1804.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 11, 1986.

Decided Jan. 23, 1987.

927

Lawrence J. Bernard, Jr., with whom Bruce A. Eisen, Lawrence Bernstein and Alan G. Moskowitz, Washington, D.C., were on brief, for petitioner.

Bruce G. Forrest, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen. and William Kanter, Atty., Dept. of Justice, Washington, D.C., were on brief, for respondent.

Charles T. Duncan, Washington, D.C., with whom Bernard Korman and I. Fred Koenigsberg, New York City, were on brief, for intervenors.

Before STARR, BUCKLEY and DOUGLAS GINSBURG, Circuit Judges.

Opinion PER CURIAM.

**PER CURIAM:**

This case presents for review the Copyright Royalty Tribunal's disposition of the 1982 and 1983 coin-operated phonorecord player royalty funds. *See generally* 17 U.S.C. §§ 116, 801–810 (1982). The 1982 disposition is making its second trip to the courts. In 1985, the Second Circuit vacated the CRT's initial disposition and remanded for further proceedings. *ACEMLA v. Copyright Royalty Tribunal,* 763 F.2d 101 (2d Cir.1985). On remand, the CRT consolidated the 1982 proceeding with the 1983 proceeding, received submissions from various claimants, held hearings, and, in November 1985, issued a Final Determination of Distribution for both funds. *See* Joint Appendix (J.A.) at 1726–31. Petitioner, Asociacion de Compositores y Editores de Musica LatinoAmericana (ACEMLA), objects to two aspects of the Tribunal's determination: (1) its holding that another, ACEMLA-related entity, Latin American Music Company (LAMCO), was entitled to a mere 0.15% of both funds as a "copyright owner not affiliated with a performing rights society" under 17 U.S.C. § 116(c)(4)(A); and (2) the holding that ACEMLA was not a "performing rights society" as defined in 17 U.S.C. § 116(e)(3). We will consider each in turn.[1]

■ Luis Raul Bernard, ACEMLA's principal, controls three entities that are relevant here: (1) ACEMLA; (2) LAMCO; and (3) Latin American Music (LAM). Mr. Bernard's characterization of the exact nature of and interrelationship among these entities has changed from time to time. Before the Second Circuit, Mr. Bernard asserted that all three entities were "performing rights societies" under the Copyright Act. On remand, however, Mr. Bernard asserted before the Tribunal that only ACEMLA was a performing rights society. Accordingly, Mr. Bernard withdrew the claims for LAMCO and LAM. *See* J.A. at 523–24, 1730. In its opening brief before

1. The background, structure, and operation of the Copyright Royalty Tribunal have been amply described in our prior decisions in *National Association of Broadcasters v. Copyright Royalty Tribunal,* 675 F.2d 367 (D.C.Cir.1982); *Christian Broadcasting Network, Inc. v. Copyright Royalty Tribunal,* 720 F.2d 1295 (D.C.Cir.1983); *see also National Association of Broadcasters v. Copyright Royalty Tribunal,* 772 F.2d 922 (D.C.Cir. 1985).

this court, ACEMLA—the only Bernard entity filing a petition for review—continued to contend that ACEMLA, and only ACEMLA, was a "performing rights society." In ACEMLA's reply brief, however, it argues for the first time that any distinctions between these three entities are pure "legal fictions" that this court should disregard on a sort of "pierce the corporate veil" theory. *See* Petitioner's Reply Brief at 2. Following well-established precedents, we decline the invitation. We will not consider a novel contention first advanced in a reply brief. *See, e.g., United States v. Oakley,* 744 F.2d 1553, 1556 (11th Cir.1984) ("Arguments raised for the first time in a reply brief are not properly before the reviewing court."); *Pignons S.A. de Mecanique v. Polaroid Corp.,* 701 F.2d 1, 3 (1st Cir. 1983); *see generally* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3974, at 428 & n. 24 (1977 & 1986 Supp.) (citing other cases). Instead, we examine this case as it was litigated—that is, we will treat the three Bernard entities as distinct claimants to the royalty funds. Within this framework, we turn to the two contentions pressed by ACEMLA.

■ *First.* ACEMLA contests the 0.15% award to LAMCO as arbitrary and capricious in that it is far too low. *See* Petitioner's Brief at 44–47. However, as we observed before, only ACEMLA is a party to this proceeding. This simple fact has an important consequence. This court is without jurisdiction to entertain this sort of challenge to the LAMCO award. Our jurisdiction to review final decisions of the CRT derives from 17 U.S.C. § 810. That provision states that "[n]o court shall have jurisdiction to review a final decision of the Tribunal except as provided in this section." It permits only "an aggrieved party" to seek review in this court. ACEMLA, however, is not aggrieved by the award to LAMCO. The two are, for our purposes, separate entities; ACEMLA thus has no statutory basis to challenge that portion of the CRT's decision that affects LAMCO. LAMCO, on the other hand, while clearly "aggrieved" by what Mr. Bernard deems to be a low award, has filed no petition for review as required by Federal Rule of Appellate Procedure 15. By virtue of not having done so, LAMCO is not a proper party before us, and we are disabled from considering the appropriateness of the Tribunal's award to it. *Cf. Farley Transportation Co. v. Sante Fe Trail Transportation Co.,* 778 F.2d 1365, 1368–71 (9th Cir.1985) (reaching conclusion of no jurisdiction in similar setting involving analogous Federal Rule of Appellate Procedure 3(c)).[2]

■ *Second.* Under section 116(c), the royalty funds collected from the compulsory jukebox license, *see* 17 U.S.C. § 116(b), are distributed first to any individual copyright owners "not affiliated with a performing rights society" to the extent such an owner proves entitlement. *Id.* § 116(c)(4)(A). The remaining funds are then distributed, *pro rata,* to "performing rights societies." *Id.* § 116(c)(4)(B). The Act sets forth the following definition of "performing rights society":

A "performing rights society" is an association or corporation that licenses the public performance of nondramatic musical works on behalf of copyright owners, such as the American Society of Composers, Authors and Publishers, Broadcast Music, Inc., and SESAC, Inc.

*Id.* § 116(e)(3).

The CRT determined that ACEMLA did not satisfy this definition and thus did not qualify to receive royalty distributions under section 116(c)(4)(B). Since ACEMLA owned no copyrights and was therefore not entitled to distributions under section 116(c)(4)(A), the Tribunal concluded that ACEMLA should receive no part of the 1982 or 1983 royalty funds. We agree.

ACEMLA insists that it is a "performing rights society." We find persuasive, how-

---

**2.** ACEMLA's only response to this argument—indeed, the only possible response—is its contention in the reply brief that the now-inconvenient distinctions between the various Bernard entities should be disregarded. As we have noted, this will not do.

ever, the Tribunal's analysis reaching the contrary conclusion. Specifically, the CRT divided the statutory definition into its three component parts, none of which, the Tribunal found, were satisfied by ACEMLA. For one thing, ACEMLA was not "an association or corporation" in 1982 or 1983. The Tribunal correctly noted that ACEMLA had no legal existence at all until 1984. J.A. at 1730. While this was not, as ACEMLA seems to suggest, the dispositive point, it was an appropriate factor, properly taken into account.

For another, ACEMLA did not "license[ ] the public performance of non-dramatic musical works on behalf of copyright owners." The Tribunal found that in 1982 or 1983 "ACEMLA did not license a single user" and that "[n]ot a single agreement with a domestic or foreign entity refers to ACEMLA." J.A. at 1730. ACEMLA contends that while this is true, it was *trying* to license the performance of musical works. The Tribunal found that trying was not enough. We agree. The CRT held that an organization need not obtain the size or market strength of the three statutorily designated "performing rights societies," ASCAP, BMI, or SESAC, to qualify for distributions under section 116(c)(4)(B). But the Tribunal has indicated that it will require that *some* actual licensing take place before an organization can qualify as a "performing rights society." *Cf.* Final Determination of the Distribution of the 1984 Jukebox Royalty Fund, CRT No. 85–1–84JD, slip op. at 12 (Nov. 25, 1986). This, it seems to us, cannot fairly be condemned as an unreasonable reading of the somewhat imprecise language of section 116(e)(3). *See Young v. Community Nutrition Institute,* —— U.S. ——, 106 S.Ct. 2360, 90 L.Ed.2d 959 (1986); *Chemical Manufacturers Association v. Natural Resources Defense Council,* 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985); *Chev-*

*ron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *cf. Board of Governors v. Dimension Financial Corp.,* 474 U.S. 361, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986).

Finally, the Tribunal concluded, with ample grounds, that ACEMLA did not possess features similar to those of ASCAP, BMI, or SESAC. *Cf.* 17 U.S.C. § 116(e)(3) (" 'performing rights society' is an association ... such as [ASCAP, BMI, or SESAC]"). Again, the CRT did not indicate it would require that "performing rights societies" possess the size or organizational structure of ASCAP, BMI, or SESAC. Rather, this statutory description serves to provide examples of features that "performing rights societies" possess—for example, licensing of music users, collection of royalties from those users, and distribution of those royalties to members. ACEMLA, the Tribunal found, engaged in no such activity: "ACEMLA did not ... receive a single royalty or make a single distribution in 1982 or 1983." J.A. at 1730.

In short, ACEMLA has none of the attributes required by section 116(e)(3). ACEMLA's only argument of substance is that because it sought to enforce performing rights, it was a "performing rights society." In our view, the CRT correctly rejected this proposition. The Tribunal has correctly applied the statutory definition of "performing rights society" and reached the proper conclusion. Accordingly, the petition for review is

*Denied.*